1   WILLIAM J. FLYNN, Cal. Bar No. 95371
    SCOTT M. DE NARDO, Cal. Bar No. 216749
2   NEYHART, ANDERSON, FLYNN & GROSBOLL
    44 Montgomery Street, Suite 2080
3   San Francisco, CA  94104
    TEL:  (415) 677-9440
4   FAX: (415) 677-9445
    Email: sdenardo@neyhartlaw.com
5
    Attorneys for Plaintiffs
6

7                 UNITED STATES DISTRICT COURT

8           FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                     (San Francisco Division)

10
    HOD CARRIERS LOCAL 166 PENSION         ) Case No.  C-07-3477 SI
11  TRUST; HOD CARRIERS LOCAL 166          )
    HEALTH, WELFARE & VACATION TRUST;)     **FIRST AMENDED COMPLAINT FOR**
12  SAM ROBINSON, as Trustee of the foregoing )  **DAMAGES FOR BREACH OF**
    Trusts; and HOD CARRIERS 166 INDUSTRY )  **CONTRACT & BREACH OF**
13  PROMOTION PROGRAM,                     )  **FIDUCIARY DUTY; AND, REQUEST**
                                           )  **FOR JURY TRIAL**
14            Plaintiffs,                  )
                                           )  [29 U.S.C. §185 and ERISA 29 U.S.C. §§
15       vs.                               )  1001 et seq.]
                                           )
16  R E SERRANO, INC., a California corporation; )
    and, RICKY EDWARD SERRANO, in          )
17  corporate capacity and individually,   )
                                           )
18            Defendant.                   )
                                           )
19                                         )
                                           )
20                                         )
                                           )
21                                         )
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )
                                           )
25                                         )

26

27

28

Plaintiffs allege:

## I.

## COMMON FACTUAL ALLEGATIONS

1.    <u>Jurisdiction.</u>  This is an action to collect unpaid contributions to multi-employer benefit plans pursuant to the terms of each plan and a collective bargaining agreement.  Jurisdiction is pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), (e) and (g), 29 U.S.C. § 1145 and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Jurisdiction also exists pursuant to 28 U.S.C. §§ 1331 and 1337.

2.    <u>Venue.</u>  Venue is appropriate in this District as Plaintiff Trust Funds are administered here (in Alameda County) and the Defendants do business here (in Alameda and Contra Costa Counties) and the breach took place in the District; 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 185.

3.    Plaintiff HOD CARRIERS LOCAL 166 PENSION TRUST, consisting of both the Hod Carriers Local 166 Pension Plan and the Hod Carriers Local 166 Money Purchase Pension Plan, and Plaintiff HOD CARRIERS LOCAL 166 HEALTH, WELFARE & VACATION TRUST are multi-employer employee benefit plans pursuant to ERISA, 29 U.S.C. § 1002(3), (37) and 29 U.S.C. § 1132(d)(1) and are jointly trusteed employee benefit trusts pursuant to the LMRA, 29 U.S.C. § 186(c)(5).  Plaintiffs HOD CARRIERS LOCAL 166 PENSION TRUST and HOD CARRIERS LOCAL 166 HEALTH, WELFARE & VACATION TRUST are collectively referred to herein as the "Trusts" or "Funds".  Employers make contributions to the Trust Funds pursuant to the requirements of the collective bargaining agreements between Hod Carriers Local 166 ("Local 166") and the employers.  The Trusts are the authorized agents or successors to earlier Trusts under the agreement between Hod Carriers Local 166 and the Defendants.

4.    Plaintiff INDUSTRY PROMOTION PROGRAM OF NORTHERN CALIFORNIA ("Promotion Fund") is a program established for the promotion of the Hod Carrier, Lathing and Plastering Industry.

5.      Plaintiff SAM ROBINSON is a Trustee of the Trusts set forth in paragraph 3.  As such, he is a fiduciary of the Trust Funds within the meaning of 29 U.S.C. §1102.  As a Trustee, Mr. Robinson has the duty, jointly exercised with the other Trustees of those Funds, to administer the Trusts for the exclusive benefit of the covered employees in accordance with the provisions of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), ERISA, and the terms of each of the Trust Funds' written Trust Agreement.

6.      Defendant R.E. SERRANO, INC.  (hereinafter referred to as "Serrano") agreed to be bound to the terms and conditions of a collective bargaining agreement with the Plaintiff Hod Carriers Local 166 (hereinafter referred to as "Local 166" or the "Union").  The collective bargaining agreement requires the Defendant to make monthly contributions to the Trusts for fringe benefits for covered employees and to submit to requested payroll audits for verification of accurate employer contributions to employee benefit plans administered by Plaintiffs.

7.      Defendant Serrano is California corporation registered with the California Secretary of State with corporate license number C1785978 and is believed to also have a California contractor's license #725244.  Defendant Serrano is engaged in the plastering and hod carrying business in San Francisco County, California.  Plaintiffs are informed and reasonably believe that Defendant Serrano is a fiduciary of the Trusts pursuant to 29 U.S.C. § 1145, et seq. Defendant RICKY EDWARD SERRANO ("Mr. Serrano") is, and at all times material hereto has been the President or Owner of Defendant Serrano.  Plaintiffs are informed and reasonably believe that Defendant Mr. Serrano, an individual, is the alter-ego of Defendant Serrano and a fiduciary of the Trusts pursuant to 29 U.S.C. § 1145, et seq.  By failing to pay contributions owed to the ERISA Trusts, Defendant Mr. Serrano is also a fiduciary to the Trusts pursuant to 29 U.S.C. § 1002(21)(A). Defendants Serrano and Mr. Serrano are collectively referred to herein as "Defendants".

8.    At all times material herein, the Defendants have engaged in the construction industry in California and as such have been an "employer" "engaged in an industry or activity affecting commerce" within the meaning of 29 U.S.C. § 152 and 29 U.S.C. §§ 1002-1003.

9.    The Defendants have repeatedly underpaid or not paid the required contributions to the plans during the relevant period of the statute of limitations pursuant to the appropriate collective bargaining agreement and/or Trust agreements.

10.    At all times material herein, Defendants have been and are now bound by the terms and conditions of a written collective bargaining agreement between the Hod Carriers Local 166 and the Contracting Plasters' Association of Alameda and Contra Costa Counties.  Plaintiffs are informed and believe and thereon allege that at all times material herein, Defendant Serrano has been and is a member of the Contracting Plasterers' Association of Alameda and Contra Costa Counties ("Association").  A true and correct copy of the collective bargaining agreement is attached hereto as Exhibit "A" and incorporated herein as though set forth at length.  The collective bargaining agreement covers the rate of pay, rules and working conditions of employees engaged in hod carrier work.

11.    Defendant Serrano has agreed and continues to agree to abide by the provisions set forth in the above-referenced collective bargaining agreement.  Defendant Mr. Serrano is bound to the collective bargaining agreement which provides that:  "Any Employer who fails to pay the contributions shall be <u>personally liable</u> under the Agreement for benefits due his employees...." (Exhibit A, at p. 15 [Article VII, Section 5], emphasis added).  The Plaintiff Trust Funds and Plaintiff Promotion Fund are third party beneficiaries of the collective bargaining agreement between Hod Carriers Local 166 and the Defendants.

12.    Pursuant to Article VII, Sections 1, 2, and 3 of the collective bargaining agreement, the Defendants agreed to be bound by the Hod Carriers Local 166 Trust Agreements for both the Hod Carriers Local 166 Health, Welfare & Vacation Trust and the Hod Carriers Local 166 Pension

Trust.  The Trust Agreements require Defendants, inter alia, to make monthly contributions to the Trust Funds at the rate set forth in the collective bargaining agreement and to submit monthly reports accurately reflecting the hours worked by Defendants' employees.  These contributions are to be made to the Trust Funds on behalf of all of Defendants' employees who perform work covered by the collective bargaining agreement.

13.    Pursuant to Article VIII of the collective bargaining agreement, Defendants agreed to make monthly contributions to Plaintiff Promotion Fund at the rates set forth in the collective bargaining agreement.

14.    Pursuant to the Trust Agreements, the collective bargaining agreement, and ERISA, an employer who fails to make timely payment of fringe benefit contributions to the Trust Funds or to the Promotion Fund is liable to the Trust Funds or to the Promotion Fund for all unpaid contributions, liquidated damages, interest, collection fees, audit costs, and attorneys' fees and costs. 29 U.S.C. §1132(g).  (Exhibit A, at p. 15 [Article VII, Section 5; Article VIII, Section 1]).

15.    Plaintiffs are informed and believe and thereon allege that during the period from at least August 1, 2005 through the present time, employees of Defendants performed work covered by the collective bargaining agreement that were not reported nor contributions submitted on behalf of those employees.  A true and correct copy of the January 1, 2004 through March 31, 2007 audit report is attached hereto as Exhibit "B" and incorporated by reference.  The performance of covered work obligated Defendants to pay fringe benefit contributions to the Plaintiff Trust Funds and contributions to Plaintiff Promotion Fund on behalf of the covered employees.   Plaintiffs have repeatedly demanded that Defendants make the proper payment of contributions, liquidated damages, attorneys' fees, interest, and other costs pursuant to the collective bargaining agreement and Trust Agreements.  For those months where the Defendant reported hours, the September and August 2005 hours were delinquent in the amount of $20,089.19 and liquidated damages in the amount of $4,017.84 were assessed.  For February 2007, April 2007 and May 2007, the Defendants

have failed to submit transmittals indicating covered hours worked for which contributions are owed to the Plaintiff Funds.

16.    Because of Defendants' failure and/or neglect to pay all sums required as alleged above, it has been necessary for Plaintiffs to engage counsel to collect said sums.  Plaintiffs are entitled to liquidated damages, reasonable attorneys' fees, interests, costs, and expenses incurred in the collection of said unpaid sums pursuant to the collective bargaining agreement, Trust Agreements and ERISA.

II.

FIRST CLAIM

(ERISA - 29 U.S.C. § 1145)

17.    Plaintiffs incorporate by reference and reallege paragraphs 1-16 as if set out in full.

18.    Jurisdiction.  This is an action to collect unpaid contributions found owing to multi-employer benefit plans and to submit missing monthly employer transmittals pursuant to the terms of each plan, Trust agreement and the collective bargaining agreement.  Jurisdiction is pursuant to ERISA, 29 U.S.C. §§ 1132(a), (e) and (g) and § 1145.

19.    The Defendant's action constitutes a failure of an employer to submit monthly transmittals and make contributions to a multi-employer plan, as well as a breach of fiduciary duty owed pursuant to 29 U.S.C. § 1145.

20.    By their failure and refusal to abide by the collective bargaining agreement and the Trust Agreements, Defendants have deprived the Plaintiffs of employer contributions owed to the Trust Funds and Promotion Fund based on work performed by the Defendants' employees in an amount to be proven at trial, motion, settlement or otherwise.  By these actions, Defendants have violated 29 U.S.C. §1145.  Pursuant to 29 U.S.C. §1132(g)(2), Plaintiffs are entitled to unpaid employer contributions, interest thereon, liquidated damages, and attorneys' fees and costs.

21.     Under the terms of the collective bargaining agreement and Trust Agreements, Defendants promised that if any monthly contributions are not paid by the 15th day of the month after the month in which Defendants' workers performed covered work, Defendants would pay an additional twenty percent (20%) of any unpaid amount, or twenty dollars ($20.00), whichever is greater, as and for liquidated damages, plus interest, costs of collection, attorneys' fees, accountant fees, and court costs to the Trust Funds and to the Promotion Fund.  Defendants agreed that these payments would be made as and for liquidated damages, and not as a penalty, since it would be extremely difficult, if not impossible, to fix the amount of actual damage incurred by the Plaintiffs as a result of the non-payment of unreported or misreported contributions.  The amount agreed upon for liquidated damages represents a reasonable endeavor to ascertain and compensate for damages caused the Plaintiffs by the non-payment of contributions.

22.     It has been necessary for the Plaintiff Trust Funds to engage counsel for the purpose of enforcing Defendants' obligations under the aforementioned Agreements.  Pursuant to the terms of the Trust Agreements and 29 U.S.C. § 1132(g)(2), Plaintiff Trust Funds are entitled to reasonable attorneys' fees and costs, accounting and auditing costs and other reasonable expenses incurred in connection with this matter, in addition to the unpaid fringe benefit contributions, liquidated damages and prejudgment interest owed by Defendants.

III.

SECOND CLAIM

(LMRA)

23.     Plaintiffs incorporate by reference and reallege paragraphs 1-16 and 18-22 as if set out in full.

24.     <u>Jurisdiction</u>.  This is an action to enforce a collective bargaining agreement pursuant to 29 U.S.C. § 185(a).

25.    Plaintiff Trust Funds are third party beneficiaries of the collective bargaining agreement and the Trust Agreements incorporated therein. Plaintiff Promotion Fund is a third party beneficiary of the collective bargaining agreement incorporated herein. By failing to make the required fringe benefit contributions, Defendants have breached the collective bargaining agreement and Trust Agreements to the detriment of Plaintiffs.

26.    The Defendant's failure to pay contributions and submit monthly employer contribution transmittals owing breached the agreement between the Defendant and the Union to the detriment of the Plaintiffs and Plaintiffs are entitled to damages, liquidated damages, interest, attorneys' fees and costs pursuant to the agreement.

IV.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray judgment as follows:

1.    For unpaid principal of $20,089.19 owed encompassing the time period of August 1, 2005 through March 31, 2007 and further unknown amounts according to proof,

2.    For liquidated damages of $4,017.84 and prejudgment interest associated with the Defendant's delinquencies resulting from late reporting encompassing the time period of August 1, 2005 through March 31, 2007, and any further amounts according to proof,

3.    For such equitable relief as this court deems just and proper,

4.    For reasonable attorneys fees and costs of suit (currently estimated to be approximately $5,000.00), according to proof, and

5.    For such other and further relief as this court deems just and proper.

Respectfully submitted,

Dated: August 2, 2007

Scott M. De Nardo
NEYHART, ANDERSON, FLYNN & GROSBOLL
Attorneys for Plaintiffs

1

2

## JURY TRIAL DEMAND

3         Plaintiffs hereby demand trial by jury.

4    Dated: August 2, 2007.

5                                                    Scott M. De Nardo
                                                     Attorney for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# Hod Carriers Local Union No. 166

**LABORERS INTERNATIONAL UNION OF NORTH AMERICA**

*Affiliated with the APL-CIO*

8400 Enterprise Way, Room 109 • Oakland, California 94621
Phones: (510) 568-0141 (510) 568-0142 (510) 568-0143 • Fax (510) 568-4537

# COLLECTIVE BARGAINING AGREEMENT

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **Article I** | Work Covered | 3 |
| **Article II** | Union Security | 4 |
| **Article III** | Hiring Hall | 5 |
| **Article IV** | Wages, Hours, and Working Conditions; Commercial Wages/ Residential Wages | 8 |
| **Article V** | Working Hours, Overtime, and Shift Work | 11 |
| **Article VI** | Safety Regulations | 14 |
| **Article VII** | Fringe Benefits | 14 |
| **Article VIII** | Industry Promotion | 15 |
| **Article IX** | Bonding | 16 |
| **Article X** | Grievance | 17 |
| **Article XI** | Employers' Membership | 18 |
| **Article XII** | Liability of Parties | 18 |

**Article XIII**  Violation of Collective Bargaining Agreement                19

**Article XIV**  Terms of this Agreement                                      19

**Article XV**   Industry Meetings                                           20

**Article XVI**  Rights of the Association                                    20

# Hod Carriers' Union Local #166
## Collective Bargaining Agreement

This Agreement was made and entered into this 1st day of July 1998 by and between the Contracting Plasterer's Association of Alameda and Contra Costa Counties and all other employers whose signatures are attached hereto and Hod Carriers Local Union #166 of the I.H.C.B & C.L.U. of America.

The following parties, Hod Carriers' Union Local #166 affiliated with the American Federation of Labor and the Contracting Plasters' Association of Alameda and Contra Counties, after due consideration, voluntarily enter into this Agreement.

It is the desire of the parties hereto to formulate an agreement which will prevent strikes or lockouts; insure peaceful adjustments; settle all grievances, disputes, and differences which may arise between said parties; and tend to stabilize as follows:

## Article I: Work Covered

**Section1:**    Hod Carrier Tending Plasterers shall mean any person serving any Plasterers in any capacity.  This includes handling all materials upon arrival at the job site to be used by Plasterers.  The job also includes making, mixing, tempering, and conveying all materials whether done by hand or machine; building and handling all necessary trestles and scaffolding in and outside of buildings; and cleaning of all debris caused by the Plasterers.  All mechanical equipment replacing in whole or part of the work of Hod Carriers shall be cleaned and operated by Hod Carriers.  This includes mixers, plaster pumps, wheelbarrows, forklifts, boom winches, tusk hoists, etc in accordance with such jurisdictional awards as maybe granted by Hod Carriers, the District Council, and Laborers' International Union of North America.

    (a) On all fireproofing jobs employer agrees to a pre- job conference five days prior
       To the start of the job.

**Section 2:**    There shall be no cessation or interference of any kind with any work of the employer by reason of jurisdictional disputes between the various Unions affiliated with the Building and Construction Trades Department of the American Federation of Labor, or such other organizations who have entered into this agreement.  The resolution of jurisdictional disputes shall be in accordance with rules of the Building and Construction Trades Department of the American Federation of Labor, with the agreement establishing National Joint Board for the Settlement of disputes in the Building and Construction Industry, or with such rules established pursuant to the agreement between such labor organizations and the I.H.C.B. and the C.L.U. of America.  The Union and the employers covered hereby shall be bound by this Agreement.

(c) Membership in the Union shall be available to persons employed in work covered by this Agreement upon terms and qualifications not more burdensome than those applied to other applicants for such membership.

# Article III:  Hiring Hall

**Section 1:** Employment

(a) The individual employer shall retain full freedom to employ, reject, or discharge any person who is referred for work covered by this Agreement, subject to the provisions of this agreement.

(b) The employer or a specifically designated individual shall notify the Union of its needs for all workmen and shall not recruit applicants directly or hire additional persons not referred by the Union, except as herein provided.

who is engaged in a new plastering contract at the time of the execution, whose principle place of business is outside or inside of the geographical area covered by this Collective Bargaining Agreement, and who thereafter commences to perform the contract within the geographical area covered by it , shall have the right at that time to initially employ directly one Hod Carrier of his own choice.

(d) Any outside employer coming into the jurisdiction of Hod Carriers' Union #166, may be permitted to bring with him one key man per California Counties: Alameda and Contra Costa

(e) The union shall maintain an open and nondiscriminatory hiring hall to fully comply with all provisions of Title VII of the Civil Rights Act of 1964, the Presidential Executive Order #10925 and #1114, and the California Fair Employment Practice Act to the extent no person shall, on the grounds of sex, race, color, or national origin, be denied the benefits of, or be otherwise subjected to discrimination by not having full access to the contents of Article III of this Agreement.

(f) All individual employers who desire to hire persons for work covered under this Agreement shall notify the office of the Union of the number of individuals needed, the qualifications of said individuals, the type of work to be performed, the location of job site, the starting time of the job, the expected duration of the job, and any other information deemed necessary by the employer to enable the Union to make proper referral of applicants.

(g) Upon receipt of such notice from the employer, the Union shall use its best effort to furnish the required number of qualified and competent individual; provided , however, the Union, its officers, agents and representatives undertake no

obligation to search for, or by any means locate an applicant on the current applicable referral list who is not physically present in the Union Hall when referrals are made.

(h) If the Union is unable to refer the number of journeymen desired within a twenty-four hours after a request, said employer may obtain additional employees up to the desired number, provided, however, that said employer notifies the Union immediately of the names and addresses of employees obtained from other source, as well as the date of employment and the location of job on which he or she is employed.

(i) The individual employer, upon request of the Union, shall notify the Union of name, address, social security number, and classification of every person employed, rejected, or discharged from work covered by this Agreement, along with the date of such employee rejection or discharge, and the location of their place or prospective place of employment.  Whenever a person is rejected or discharged from such work, the individual employer shall notify the Union of the

in writing within forty- eight hours after such rejection or discharge.

(j) Each person, upon referral, shall receive a referral slip to be presented to the employer's representative at the job site.  The referral slip should provide the name, address, social security number, type of job, date of proposed employment, and date and time of referral.  The employer representative should note the time of arrival of said person.

(k) The employer shall have the right to "call back" by name any employee who has been employed by said employer within one year prior to such request being made.

(l) Registration and referral of applicants shall be made in accordance with the following:

**Registration**

(a) For the purpose of referral, the Union shall maintain a journeyman and trainee list of applicants.

   (i) To be eligible for the Journeyman list, a person must have worked at least three hundred sixty days on the type of work covered by this Agreement.  The document must be under the I.N.S. Form I-9.

   (ii) To be eligible for the Trainee list, a person must be registered with the Joint Trainee Committee established by and between the Committee and Local Union #166.  Also, the individual must have worked less than three hundred sixty days on the type of work covered by this Agreement.

(b) Names of all persons shall be entered on said list in the order in which they come to the office seeking employment. Each person, at the time of applying for a job, shall indicate his or her own qualifications for such type of work.

(c) After each workman's name there shall be an indication of what type of work he or she is qualified to perform.

(d) Referrals from the Union shall be made from 7:00 a.m. to 9:00 a.m. daily. Saturdays, Sundays, and holidays are excluded except in the case of an emergency.

(e) To insure the maintenance of a current registration list, all persons who do not register daily shall be removed from the registration list. If such persons register pursuant to the provisions of this section, they shall maintain their previous position on such list subject to the provisions of this section.

reasons:

(i)   Failure to accept employment two times during the current week at the time of dispatch.

(ii)  Failure to report to work after being dispatched.

- When an individual is dispatched to a lob, but fails to complete two continuous full day's work he or she shall retain their position on said list.

**Referrals**
(a) Referral hours from the Union shall occur between the hours of 7:00 a.m. and 9:00. Saturdays, Sundays, and Holidays are excluded except in the case of an emergency.
(b) Persons shall be referred in the order in which they register. The order of referral shall be as set out herein except in the case where in employer requires someone possessing special skills, in such case the Union shall refer the first applicant on the registration list possessing such skills.
(c) The time of dispatch shall be entered on each dispatch slip given the employee by the Union. The time of arrival on the job site shall be entered on the dispatch slip by a representative of the contractor. One copy of the dispatch slip shall be retained by the employee and the other by the employer.

**Section 2: Posting**
    The provisions of this Agreement relating to Union Security and Hiring Hall Practices shall be posted by the employer and the Union in appropriate places where such notices are customarily posted.

**Section 3: Grievances**

Any employee of applicant for employment who is aggrieved by the application process or by any provisions of this Agreement may submit a grievance to the Board of Adjustment. Such grievance must be submitted in writing within ten days of the incident. Failure to do so will result in the grievance being waived.

# Article IV: Wages, Hours, and Working Conditions

Whenever an employee covered by this agreement works outside the jurisdiction of this Agreement or with employers covered by an agreement with another Local Union in the same craft, and the scale of wages varies, such employee shall receive the higher scale of wages.

## Commercial Wages

**Section 1:**

increased $2.14 for the first year, $2.14 for the second year, $2.14 for the third year, and $2.14 for the fourth year.

## Residential Wages

**Section 1:**
Effective July 1, 1998 to hold the line on all residential work.

**Section 2:** Gun Man: On all jobs or projects employing a Gun Man, the Gun Man shall receive $0.75 more per hour over the prevailing scale wages.

**Section 3:** Parking: All Hod Carriers driving to work shall also receive actual parking expenses up to but not in excess of $2.00 per day for each day at the job site. The same to be payable only upon presentation of parking ticket or receipt to the foreman at the end of the day.

**Section 4:** Training Program: Each employer represented by the Association and each individual employer signatory hereto, or who may hereafter become signatory hereto agrees to be bound by all terms and conditions of the Hod Carrier's Union Local #166 Training Fund and Trust dated October 1, 1970 and by any amendments thereto as well as any amendments which may hereafter become effective during the term of this Agreement.

(a) The parties agree that a signatory employer may employ one person enrolled in the Hod Carriers' Union Local #166 Training Program, provided that three journeyman Hod Carriers are employed by such employer. After a signatory employer has hired six journeymen, he shall be allowed to hire an additional trainee. After nine journeymen have been hired the employer shall be allowed to

8

hire a third trainee, and so on as long as the ratio of journeymen to trainee is maintained at least three to one. The employer must lay off sufficient trainees or hire sufficient journeymen to maintain the three to one journeyman to trainee ratio.

(b) The Union shall maintain a separate out- of – work list for the trainees. Trainees shall be dispatched in accordance with the rules outlined in Article IV, section 2 of this Agreement.

(c) The wages and fringes of trainees shall be as follows:

|  | Percentage of Straight Time Journeyman Rates |
|---|---|
| 1st 30 days | 40% |
| Next 6 months (2nd thru 7th) | 50% and all fringes |
| Next 6 months (8th thru 13th) | 65% and all fringes |
| Final 5 months (20$^{m}$ thru 24$^{tn}$) | 85% and all fringes |

(d) Trainees shall be considered probationary employees for the first thirty days of their training. Such trainees shall not be entitled to any fringe benefits. Following the successful completion of the thirty- day probationary period, such trainee shall be entitled to have payment of all fringe benefits and conditions. Such trainees shall be entitled to any fringe benefits contained in this Agreement, with the exception that straight time hourly wages shall be paid at the percentages of the journeyman rate outlined above.

**Section 6:** Subsistence will be paid at the rate of fifteen dollars per day, seven days a week for any job outside the jurisdiction of Hod Carriers Union Local #166, if the roundtrip fare exceeds five dollars per trip.

**Section 7:** All Hod Carriers shall report fifteen minutes before the normal work hour for the purpose of setting up equipment. Said fifteen minutes shall be paid at the rate of five dollars, effective July 1, 1998.

**Section 8:** It is further agreed that when an employer hires men for work outside the jurisdiction of Hod Carriers Union Local #166, and the scale of wages is different from that of the Local involved, the higher of the two scales shall be paid.

**Section 9:** Any Hod Carrier dispatched to a job at the request of the employer and , through no fault of his or her own, is not put to work shall receive two hours pay plus travel expenses from said employer. Should the employee continue working after noon, he or she shall be entitled to a full day's pay plus travel expenses. The above shall not be enforced if the employee is under the influence of alcohol or is prevented from working by circumstances beyond the control of the employer.

**Section 10**:  All Hod Carriers laid off or discharged must be paid in full immediately.  If given an office number he or she must be allowed one hour additional time going from the job to the office where payment is to be made.  Whenever employees are not paid on or before 3:15 p.m. or 11:45 a.m. on Friday, they shall receive full waiting time for each hour until payment is made with a minimum of two hours.

**Section 11:**  If a Hod Carrier does not receive his wages when due, he shall receive, as a penalty of nonpayment of wages, an amount equivalent to the regular rate of wages for each hour until paid, but not to exceed seven hours pay in a twenty- four period.

**Section 12**:  When a Hod Carrier is dispatched to any job site, he or she must report to work for that specific job at least one day.  If conditions are such that said dispatched employee cannot work, he or she shall call the office and wait on the job until the replaced or the business agent arrives on the job.  When a Hod Carrier is working in shop and conditions beyond his control prevent him from going to work, he shall notify the Union and his employer and get replacement.

ne or she shall receive compensation for the full day.

**Section 14**:  Every Hod Carrier must be paid in full fifteen minutes before quitting time on Friday.  In order to facilitate the making out of payrolls, the employer may be allowed three days hold back on the payrolls to be optional with the employer.

**Section 15**:  When one or more employees covered by this Agreement are working on a job, the Business Manager of the Union may, at his own discretion, appoint one of the employees as Job Steward.

**Section 16**:  No Hod Carrier or Steward shall be discharged or discriminated against for upholding the conditions of this Agreement.

**Section 17**:  No Steward shall have the power to stop any job, but shall, at the occurrence of any grievance, notify the representatives of the Local Union  and await his arrival at without cessation of work.

**Section 18**:  Job Stewards shall not be laid off for any reasons other than lack of work or failure to perform their work.  The employer shall be the sole judge of the employee's performance.  The Steward or any Hod Carrier shall have the right to challenge any Hod Carrier for paychecks, books and cards.

**Section 19**:  The employer agrees that the Union representative shall at any time have free access to the job for purposes of checking that conditions of the collective bargaining agreement are adhered to.

**Section 20**:  The standard hod accepted by the Union shall be the equivalent of the inside measurement of twenty- two inches in length, eleven inches in height, and twelve inches

in width. No Hod Carrier shall be allowed, nor shall the employer require him or her to carry more than the standard hod.

**Section 21:** As a safety measure, all employers are required to use standard Hod Carrier ladders on the job. Standard Hod Carrier ladders shall be no more than five inches separating each rung.

**Section 22:** Hod Carriers shall not be allowed, nor shall an employer require him or her to haul more than a hammer and a saw to and from the job site in his or her own vehicle. All Hod Carriers shall be required to wear white pants, overalls, or protective covering.

**Section 23:** No Hod Carrier shall work when contractors, foremen, or plasterer trainees infringe on their jurisdiction.

**Section 24:** Hod Carriers shall be responsible for cleaning the employer's wheelbarrow, mixer, and plaster guns prior to leaving the job site. In the event a Hod Carrier fails to clean such items and damage results, the employer may, within five days of such failure, bring the responsible Hod Carrier before the Joint Arbitration Board. In the Event the

not to exceed fifty dollars for the first offense. Repeated violations within a six month period may subject the Hod Carrier to fines up to two hundred dollars for each repeated violation.

**Section 25:** It is further agreed that all plastering contractors or other employers of Hod Carriers shall have some specific brand name for identifying their respective equipment to Hod Carriers.

**Section 26:** All signatory employers agree to notify the Union twenty- four hours in advance of loaning any equipment to Hod Carriers.

**Section 27:** The Union agrees to notify the Contracting Plaster's Association of all overtime permits issued by the Union.

**Section 28:** On May 1st of each year a committee comprised of Labor and Management in equal numbers will meet to discuss the possibility of extending the work bay for a period of four months during the summer.

## Article V :Working Hours, Overtime, and Shift Work

Working hours are 8:00 a.m. to 12:00 p.m. and 12:30 p.m. to 3:30/ 4:30 p.m. Shift work is to be with a letter of understanding as to shift pay.

**Section 1:** Effective as of July 1, 1998 the regular work week on commercial work shall consist of forty hours per week, Monday through Friday. On residential work, the work week shall vary according to the option of the individual employers as provided in Article IV, but in no event shall exceed forty hours.

**(b)**    Individual Employer shall authorize and permit all employees to take one ten (10) minute coffee break or rest for every four (4) hours, or major fraction thereof, worked. The rest period shall be, insofar as practicable, in the middle of each four (4) hour work period, at the convenience of the job operation.    If the Individual Employer fails to provide an employee a rest period in accordance with this Section, the Individual Employer shall compensate the employee one (1) hour of wages and fringe benefits at the employee's regular rate of compensation for each work day that the rest period was not provided.    Authorized rest period time shall be counted as hours worked for which there shall be no deductions from wages.    Rest periods shall take place at areas designated by the Individual Employer, which may include or be limited to the employee's immediate work area.

**Section 2**:    Overtime shall not be worked unless an emergency exists or unless the employer obtains an overtime work permit from the Union hall having jurisdiction over such work.    Overtime permits must be posted on the job in advance of work beginning on an overtime basis.

       verbal permit will be allowed when time will not permit a contractor or his agent to pick up an overtime permit from the Union hall.

(b)    On all work covered by this Agreement, the first four hours after the end of the approved or regular work day shall be paid at time and a half.

(c)    Time and a half shall be paid for the first eight hours worked Saturdays.

(d)    All other time shall be paid at double the straight time rate.

(e)    All time worked on Saturday, Sunday, and holidays shall require a written permit from the Union to be posted on the job and shall only be issued for a minimum of four hours work, and shall be paid at the applicable overtime rate.    All fringe benefit contributions shall be at straight time.

**Section 3**: Recognized holidays: Align all holidays with the Carpenters (same as Plasters).

**Section 4:**    Recognized holidays are New Year's Day, President's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanks Giving Day and the day after, and Christmas Day.    If any such holiday falls on a Sunday, it shall be observed on the following Monday.

**Section 5:**    The following holidays and days off will be observed through the contract:

       Independence Day Weekend:    Friday, July 2 and Monday, July 5, 2004:
       Labor Day weekend:    Friday, September 3 and Monday, September 6, 2004;
       Thanksgiving Day holiday: Thursday November 25 and Friday, November

26, 2004; Christmas holiday : Friday, December 24, 2004; New Year's Day: Friday, January 1, 2005; Martin Luther King Jr. Day: Monday, January 17, 2005; Presidents' Day Weekend: Monday, February 21, 2005; Memorial Day Weekend: Friday, May 27 and Monday, May 30, 2005.

**Section 6:**  All signatory employers will be notified at the beginning of each contract year regarding holidays and days off.

**Section 7:**  It shall not be a violation of this Agreement for the Union to remove employees of an employer, or to refuse to man any job for and employer who is signatory to any agreement with a Local Union affiliated with the Bay Area Conference of Hod Carriers, when such employer is or has become delinquent in his payment of wages, health and welfare, pension, vacation, and other fringe benefits or other remuneration.

 (a)  During the term of this Agreement, as long as neither party is in violation of this Agreement, there shall be no strike or lockout.  It shall not, however, be a violation of this section for employees by this Agreement to honor a sanctioned

**Section 8:**  It is agreed that all work covered by this Agreement, either performed by the Individual employers covered by hereby or by any person , firm, or corporation for and on behalf of the Individual employer covered by the subcontract, or otherwise; or an Individual employer in association with any other person, firm or corporation, shall be governed by the terms and conditions of this Agreement.

 (a)  The Individual employer agrees that he will not contract to have  performed any work at the site of construction, alteration or repair of a building, structure or other work with anyone not signatory to the Collective Bargaining Agreement;

 (b)  A National or International Union now affiliated with the Building Construction Trades Department, AFL- CIO; or

 (c)  A labor organization whose National or International Union is now affiliated with the Building Construction Trades Department, AFL- CIO, or its predecessor, or a State or Local Building and Construction Trades Council.

 (d)  The employer further agrees that he will include in his contracts to have performed work at the site of construction, alteration, repair of a building, structure or other work, appropriate provisions to carry out this Agreement.

**Section 9:**  When employees are required to travel outside the area covered by this agreement they shall be paid transportation at the rates charged by public carriers and all toll fares.

## Article VI: Safety Regulations

**Section 1:** Every employer employing Hod Carriers and Shop hands shall provide for the safety of his employees by complying with all Federal, State, and Municipal laws and regulations pertaining to the plastering industry.

**Section 2:** In the event a Hod Carrier is injured on the job and requires hospitalization, he shall receive compensation for the full day.

## Article VII: Fringe Benefits

**Section 1:** Health and Welfare: Effective for all work performed on or after July 1, 2004. The individual employer shall pay to the Hod Carriers' Industry Welfare Trust Fund $6.21 per hour for each hour worked by each of its employees on work covered by this Agreement. Said rate shall be subject to increases as of July 1, 2004 as the Union, in its sole discretion, may allocate.

    (a) Said Trust Fund shall be administered in accordance with the Trust Fund Agreement. If any amendments are made to said Agreement, the individual employer agrees to be bound by said Trust Fund Agreement as so amended.

**Section 2:** Pension: Effective for all work performed on or after July 1, 2004, the individual employer shall pay to the Northern California Hod Carriers' Industry Pension Trust Fund $5.05 per hour for each hour worked by each of its employees on work covered by this Agreement.

    (a) Said Trust Fund shall be administered in accordance with the Trust Agreement. If any amendments are made to said Agreement, the individual employer agrees to be bound by said Trust Fund Agreement.

**Section 3:** Supplemental Money Purchase Plan: Effective for all work performed on or after July1, 2004 the individual employer shall pay to Hod Carriers' Supplemental Retirement Fund $3.00 per hour for each hour worked by each of its employees on work covered by this Agreement.

    (a) Said Trust Fund shall be administered in accordance with the Trust Fund Agreement. If any amendments are made, the individual employer agrees to be bound by this Agreement.

**Section 4:**

    (a) **Commercial-** Vacation Pay & Dues Check- Off: Dues Check- Off $ 1.50 per hour. The contributions to the Vacation Fund and Dues Check- Off shall be deducted from the net pay of each employee.

(b) **Residential**- Same as Section 4(a): Dues- Check- Off $ 1.37 per hour.

**Section 5:** The payments and contributions that are provided for in Article VI, Sections 1 through 4 shall herein be made in accordance with the applicable Trust Agreement and regulations prescribed by the Board of Trustees of the applicable Trust.

The payments provided for in Article VI, Sections 1 through 4 are due and payable on or before the fifteenth day of the month. If the fifteenth day falls on Saturday, Sunday, or a holiday the following business day's postmark shall be acceptable.

Payments received after the fifteenth day of the month, unless bearing an official postmark of the United States Postal Service, and that are mailed on or before the fifteenth day of the month shall thereupon become delinquent. For the purposes of this Agreement, private postal machine postmarks shall not be considered valid after the fifteenth day of the month. A delinquent employer shall pay such Fund twenty percent of any unpaid amount or twenty dollars whichever is greater as and for liquidated damages plus interest upon the total amount from the date due and costs of collection including attorney fees, accountant fees and court costs. Any contractor or employer whose

men.

Any employer who fails to pay the contribution shall be personally liable under the Agreement for benefits due his or her employees specified in the plans referred to above if said employees do not receive said benefits by reason of such employer's failure to make such contributions on their behalf.

## Article VIII: Industry Promotion

**Section 1:** The parties agree that they have established and will maintain an Industry Promotional Program, Incorporated established in accordance with all applicable State and federal Corporate Laws. All signatory employers agree to contribute for each hour worked by all employees on work covered by this Agreement toward the operation and maintenance of the aforementioned Program. Effective July 1, 2004 fifty- eight cents commercial and forty- three cents residential per hour shall be contributed into the Industry Promotional Program of Northern California.

Payments for the hours worked in the preceding month will be due on or before the fifteenth day of the month. Payments received after the fifteenth day of the month, unless bearing an official postmark of the United States Postal Service indicating mailing on or before the fifteenth day of the month shall thereupon become delinquent for the purposes of this Agreement. Private postal machine postmarks shall not be considered an official postmark. A delinquent employer shall pay twenty percent or twenty dollars which ever is greater as and for liquidated damages. In addition the employer shall pay interest upon the total amount from the date due plus costs of collection including attorneys fees, accountant fees, and court costs. Any contractor or employer whose payment is not received by the thirtieth day of the month shall no longer be furnished men.

# ARTICLE IX: BONDING

**Section 1:**   The parties hereto recognize that the payment of wages and employer contributions to the fringe benefit funds and other financial obligations hereunder are the essence of this Agreement.  In order to ensure that such financial obligations are met each employee bound to this Agreement agrees to deposit adequate security with the administrator of the Hod Carriers' Union Local #166 Welfare, Vacation, and Pension Funds.  Adequate security shall be deemed either:

   (a) A bond is the principal sum of ten thousand dollars underwritten by a recognized Surety Company; or

   (b) A cash bond deposited with the administrator referred to above in the amount of ten thousand dollars.  The ten thousand dollar cash bond may be accumulated by an initial contractor deposit of five hundred dollars and the payment thereafter of one dollar per hour and fringes to be paid weekly for each hour worked by each employee covered by this Agreement until the principal amount of ten thousand

**Section 2:**  In addition to securing wages and fringes, bonds, cash, or surety shall cover liquidated damages and cost of collection including accounting and attorneys fees.

**Section 3:**  Interest accumulated on cash bonds shall be surcharged for administration of the cash bond deposit fund.  In the event the contractor who has deposited a cash bond with the administration has left the jurisdiction or in the event a contractor's work in the jurisdiction has been completed, such contractor may apply to have cash bond refunded ninety days after having left the jurisdiction and/ or completed work within the jurisdiction.  Said cash bond plus interest thereon less any unpaid wages and/ or fringes less proportionate charges for administration of the cash bond deposit fund, shall thereupon be refunded to the contractor.

**Section 4:**  When the Union or the trustees of the various trusts file a claim with the administrator because wages and/ or fringe contributions have not been made, such claim shall be immediately honored by the administrator.  If a contractor disputes all or part of said claim, he may, upon presentation of his proof of  and upon a favorable determination by the Labor Management Committee have restored to his credit that portion of the claim which is determined to be unfounded.

**Section 5:**  The Union may withdraw employees from or refuse to dispatch employees to any employer who is not in full compliance with this Agreement.  Such withdrawal or refusal to dispatch shall not be a violation of this Agreement.

**Section 6:**  The Union and the Trust Fund, individually and collectively, agree to save harmless and defend the Association and its individual members against any claim or

discharge of damage or loss which might result, directly or indirectly, from the application of this bonding agreement.

## Article X: Grievance

**(a)** In the event a grievance arises, excepting those set forth, between the Union and its members and the employers, which cannot be amicably resolved within 48- hours, the Union may put the grievance or dispute in writing and require the creation of a Joint Arbitration Board which shall hear the positions of the parties and render a decision. Said arbitration board shall be composed of two representatives selected by the Union and two representatives selected by the employer.

**(b)** Said Board shall organize at once, elect a chairman and a secretary, and adopt the rules of procedure which shall bind employers, Union and their members. Said Board shall select a date, not to exceed ten days from the date of the organization of the Board, for a hearing on the merits of the dispute or grievance. Notice of time ,

shall be deemed good when served upon the employer, a responsible supervisor of the employer, or at the employers principal place of business.

The hearing before the Arbitration Board shall not be delayed except in the event of :
(1) The employer adjusting the dispute or grievance in the manner requested by the Union;

(2) Mutual agreement between parties involved.

In the event the employer or his authorized representative does not appear at the appointed place and time for the hearing, the dispute or grievance shall be settled in favor of the Union. In the event the Union does not appear at the appointed place and time for the hearing, the grievance or dispute shall be settled in favor of the employer.

**(c)** Said Board shall have the power to adjust any differences of any character that any arise regarding the meaning or enforcement of this Agreement. If the Board , rendered on the matter referred to it, the members of the Board shall choose a fifth member who shall have no business or financial connection to either party. The decision of the Board shall be determined by the majority of its members and shall be rendered in writing within five days after the selection of the fifth member. Any decision rendered by the Board shall be final, conclusive and binding for the employers, the Union, and its members.

**(d)** Pending such decision, work shall be continued under the status quo prior to the time of the dispute. Any decision so rendered by the Board shall be immediately enacted and work thereafter continued in accordance with agreement and provisions of such Board.

(e) Each party shall bear the expenses of the members of the Board selected as well as the expenses of the fifth member. However, in the event that either party alleges that the dispute submitted to arbitration is unfounded, upon such findings by the arbitrator, said party shall be awarded a judgement in their favor as well as all costs of arbitration with the exception of attorneys fees. In the event a nonmember of the Contracting Plasters Association of Alameda and Contra Costa Counties is brought before the Joint Arbitration Board by the Union, such employer shall be required to pay fees of $100.00 for the services of the employer arbitrator members of the Board.

(f) Nevertheless any provisions of this Agreement to the contrary, no dispute, complaint or grievance arising out of the failure or refusal of an Employer to comply with the Union security, hiring hall, wages, health and welfare, fringe benefits, or other sections of this Agreement shall be subject to the grievance or arbitration provisions of this Agreement. It shall not be a violation of this Agreement for the Union to withdraw its members or refuse man any job of any employer who fails or refuses to comply with the provisions herein contained, and such withdrawal of member or refusal to man a job shall not be a strike or work stoppage within the terms of this

## ARTICLE XI: EMPLOYERS MEMBERSHIP

**Section 1:** This Agreement is made for and on behalf of , and shall be finding upon al persons, firms, or corporations at the time of the execution of this Agreement who are , or who, during the term thereof become members of the Association, and any employer who is not a member of the Association and who may execute this Agreement.

**Section 2:** The Association represents that, on the date of its execution of the Agreement, it represents those persons, firms, or corporations whose names are listed on Schedule A attached hereto, which is hereby made a part hereof, and said persons, firms, or corporations so listed have duly authorized it to make this contract for and on behalf as their parties hereto. The Association shall, on occasion, supply the Union with any change in the membership.

**Section 3:** The Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers, and assigns of the party hereto.

## ARTICLE XII: LIABILITY OF THE PARTIES

**Section 1:** It is mutually understood and agreed that neither the Association, the individual employer, nor the Union shall be liable for damages caused by the acts or conduct of any individuals or groups of people who are acting or conducting themselves in a matter that is a violation of the terms of this Agreement without authority of respective party, provided that such action or conduct has not been specifically

other of a desire to change at least ninety days prior to the expiration date of the Agreement.

**Section 2:** If after notice as provided in Section 1 above , no agreement has been reached between the parties by the then expiration date then this Agreement shall terminate at midnight on such expiration date.

## ARTICLE XV: INDUSTRY MEETINGS

It is mutually agreed that for the betterment of the industry, meetings shall be held at least once every three months with members of the industry in equal number; namely Lathers, Plasterers, Hod Carriers and its Contractors to resolve any problems that may arise in the area.

## ARTICLE XVI: RIGHTS OF ASSOCIATION

The employer shall have the right to designate one member of the Association to investigate the hiring hall practices of the Union, provided said inspections are made during reasonable business hours. This right of inspection extends only to the written referral records of the Union and to the general hiring hall practices. It does not extend any right of said representative to inspect financial records of the Union. Any discrepancies noted by said representative shall be promptly brought to the attention of the Union by a letter addressed to its duly Business Agent.

**In witness thereof,** the parties hereto have set their hands and seals this 1st day of July 2004 by their respective offices duly authorized to do so.

Contracting Plasterer's Association of          Hod Carriers' Union Local #166
Alameda and Contra Costa Counties

Sam Nava                                        Michael Davis

Robert E. Brown                                 Sam Robinson

**Other Employers:**

Contractor: _____

Address: _____

_____

Telephone No.: _____

Signature & Title: _____

License No.: _____

Classification: _____

Date: _____

**EXHIBIT** **B**

# Hod Carriers Local #166
## Summary of Liabilities
## RE Serrano, Inc.
### Account # 954
## Inspection period: January 1, 2004 through March 31, 2007

| DESCRIPTION | TOTAL HOURS | PRINCIPAL | TOTAL |
|---|---|---|---|
| **Unreported Hours** | | | |
| Exhibit A: 2005 | 1,009.00 | $20,089.19 | $20,089.19 |
| **COMPANY TOTALS** | **1,009.00** | **$20,089.19** | **$20,089.19** |

**Hod Carriers Local #166**
**RE Serrano, Inc.**
Account # 954
Inspection period:  January 1, 2004 through March 31, 2007

**Exhibit A**
**Unreported Hours**
**2005**

| Employee | Work Month | Actual Hours | Reported Hours | Diff. | $3.000 / 3.000 Vacation - Holiday | $4.300 / 4.800 Pension | $5.460 / 5.910 Health Welfare | $0.100 / 0.100 Appr. & Training | $2.750 / 2.750 Money Purchase | $1.10 / 1.100 Dues Checkoff | $2.25 / 2.250 Organizing & Cash Bond | $18.960 / 19.910 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Malone, Frank 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 | Aug-05 | 30.0 | 0.0 | 30.0 | 90.00 | 144.00 | 177. | 3.00 | 82.50 | 33.00 | 67.50 | 597.30 |
| | | 30.0 | | | 90.00 | 144.00 | 177. | 3.00 | 82.50 | 33.00 | 67.50 | 597.30 |
| Moore, Delano 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 | Aug-05 | 16.0 | 0.0 | 16.0 | 48.00 | 76.80 | 94. | 1.60 | 44.00 | 17.60 | 36.00 | 318.56 |
| | | 16.0 | | | 48.00 | 76.80 | 94. | 1.60 | 44.00 | 17.60 | 36.00 | 318.56 |
| Serrano, Javier 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 | Aug-05 | 30.5 | 0.0 | 30.5 | 91.50 | 146.40 | 180. | 3.05 | 83.88 | 33.55 | 68.63 | 607.26 |
| | | 30.5 | | | 91.50 | 146.40 | 180. | 3.05 | 83.88 | 33.55 | 68.63 | 607.26 |
| Canal, Edgar 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 | Aug-05 | 69.5 | 0.0 | 69.5 | 208.50 | 333.60 | 410. | 6.95 | 191.13 | 76.45 | 156.38 | 1,383.75 |
| | Sep-05 | 180.0 | 0.0 | 180.0 | 540.00 | 864.00 | 1,063.8 | 18.00 | 495.00 | 198.00 | 405.00 | 3,583.80 |
| | | 249.5 | 0.0 | 249.5 | 748.50 | 1,197.60 | 1,474.5 | 24.95 | 686.13 | 274.45 | 561.38 | 4,967.55 |
| Lua, Octavio 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 | Aug-05 | 32.0 | 0.0 | 32.0 | 96.00 | 153.60 | 189.1 | 3.20 | 88.00 | 35.20 | 72.00 | 637.12 |
| | Sep-05 | 132.0 | 0.0 | 132.0 | 396.00 | 633.60 | 780.1 | 13.20 | 363.00 | 145.20 | 297.00 | 2,628.12 |
| | | 164.0 | 0.0 | 164.0 | 492.00 | 787.20 | 969.2 | 16.40 | 451.00 | 180.40 | 369.00 | 3,265.24 |

Date column headers: January 1, 2005 through June 30, 2005 / July 1, 2005 through December 31, 2005

**Hod Carriers Local #166**
RE Serrano, Inc.
Account # 954
Inspection period:  January 1, 2004 through March 31, 2007

**Exhibit A**
**Unreported Hours**
**2005**

| Employee | Work Month | Actual Hours | Reported Hours | Diff. | $3.000 / 3.000 Vacation - Holiday | $4.300 / 4.800 Pension | $5.460 / 5.910 Health Welfar | $0.100 / 0.100 Appr. & Training | $2.750 / 2.750 Money Purchase | $1.10 / 1.100 Dues Checkoff | $2.25 / 2.250 Organizing & Cash Bond | $18.960 / 19.910 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Robinson, Nathan 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 | Aug-05 | 32.0 | 0.0 | 32.0 | 96.00 | 153.60 | 189. | 3.20 | 88.00 | 35.20 | 72.00 | 637.12 |
| | Sep-05 | 210.0 | 0.0 | 210.0 | 630.00 | 1,008.00 | 1,241. | 21.00 | 577.50 | 231.00 | 472.50 | 4,181.10 |
| | | 242.0 | 0.0 | 242.0 | 726.00 | 1,161.60 | 1,430.. | 24.20 | 665.50 | 266.20 | 544.50 | 4,818.22 |
| Grigsby, Walter 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 | Sep-05 | 123.5 | 0.0 | 123.5 | 370.50 | 592.80 | 729.8 | 12.35 | 339.63 | 135.85 | 277.88 | 2,458.89 |
| | | 123.5 | 0.0 | 123.5 | 370.50 | 592.80 | 729.8 | 12.35 | 339.63 | 135.85 | 277.88 | 2,458.89 |
| Jackson, William 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 | Sep-05 | 50.0 | 0.0 | 50.0 | 150.00 | 240.00 | 295.5 | 5.00 | 137.50 | 55.00 | 112.50 | 995.50 |
| | | 50.0 | 0.0 | 50.0 | 150.00 | 240.00 | 295.5 | 5.00 | 137.50 | 55.00 | 112.50 | 995.50 |
| St. Jules, Byron 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 | Sep-05 | 53.5 | 0.0 | 53.5 | 160.50 | 256.80 | 316.1 | 5.35 | 147.13 | 58.85 | 120.38 | 1,065.19 |
| | | 53.5 | 0.0 | 53.5 | 160.50 | 256.80 | 316.1 | 5.35 | 147.13 | 58.85 | 120.38 | 1,065.19 |
| Gasca, Julio 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 | Sep-05 | 14.5 | 0.0 | 14.5 | 43.50 | 69.60 | 85.7 | 1.45 | 39.88 | 15.95 | 32.63 | 288.70 |
| | | 14.5 | 0.0 | 14.5 | 43.50 | 69.60 | 85.7 | 1.45 | 39.88 | 15.95 | 32.63 | 288.70 |

January 1, 2005 through June 30, 2005
July 1, 2005 through December 31, 2005

**Hod Carriers Local #166**
RE Serrano, Inc.
Account # 954
Inspection period:  January 1, 2004 through March 31, 2007

**Exhibit A**
**Unreported Hours**
**2005**

| Employee | Work Month | Actual Hours | Reported Hours | Diff. | Vacation - Holiday $3.000 / 3.000 | Pension $4.300 / 4.800 | Health Welfare $5.460 / 5.910 | Appr. & Training $0.100 / 0.100 | Money Purchase $2.750 / 2.750 | Dues Checkoff $1.10 / 1.100 | Organizing & Cash Bond $2.25 / 2.250 | Total $18.960 / 19.910 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | *January 1, 2005 through June 30, 2005 / July 1, 2005 through December 31, 2005* | | | | | | | | |
| Knowles, Eugene 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 | Sep-05 | 26.0 | 0.0 | 26.0 | 78.00 | 124.80 | 153.( | 2.60 | 71.50 | 28.60 | 58.50 | 517.66 |
| | | 26.0 | 0.0 | 26.0 | 78.00 | 124.80 | 153.( | 2.60 | 71.50 | 28.60 | 58.50 | 517.66 |
| Ornelas, Jose 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 | Sep-05 | 9.5 | 0.0 | 9.5 | 28.50 | 45.60 | 56.] | 0.95 | 26.13 | 10.45 | 21.38 | 189.15 |
| | | 9.5 | 0.0 | 9.5 | 28.50 | 45.60 | 56.] | 0.95 | 26.13 | 10.45 | 21.38 | 189.15 |
| Totals | | 1,009.0 | 0.0 | 1,009.0 | $3,027.00 | $4,843.20 | $5,963.1 | $100.90 | $2,774.75 | $1,109.90 | $2,270.25 | $20,089.19 |

PROOF OF SERVICE BY MAIL

I, the undersigned, declare:

I am employed in the City and County of San Francisco, State of California. I am over the age of 18 years and not a party to the within action; my business address is 44 Montgomery Street, Suite 2080, San Francisco, California 94104. On August 2, 2007, I served the within:

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT & BREACH OF FIDUCIARY DUTY; AND, REQUEST FOR JURY TRIAL**

on the parties in said cause following our business practice, with which I am readily familiar. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid. I placed a true copy of the within document enclosed in a sealed envelope with first class postage thereon fully prepaid for collection and deposit on the date shown below in the United States mail at San Francisco, California addressed as follows:

William H. McInerney, J.R.
McINERNEY & DILLON, P.C.
1999 Harrison, Suite 1700
Oakland, CA 94612

I declare under the penalty of perjury that the foregoing is true and correct, and that this declaration was executed on August 2, 2007, at San Francisco, California.

Judy Dunworth